LEE SANDERS ET AL. v. THOMAS H. DUVAL.

1. Suit was prosecuted to success to establish a certificate not recommended by the traveling board of Land Commissioners; the certificate of the clerk to such judgment was located as a certificate, and a patent issued thereon. *Held*, that the *original certificate* was merged in the judgment, and all locations and surveys under the original certificate were avoided by such relocation after judgment.

2. Upon the failure to return field notes duly certified, with the certificate, to the Land Office, as prescribed by the act of February 10, 1852, the location and survey became void, and the land subject to relocation.

3. The purchaser of land covered by the abandoned location, pending the suit to validate the certificate, has no equities against a subsequent locator of the land, who has obtained a patent upon his location.

4. Upon the acquisition by purchase of lands adjoining the residence or

farm of the purchaser, his possession is not extended by construction to the limits of his new purchase, nor will occasional entries thereon be held as occupation and enjoyment under the five years statute of limitation.

APPEAL from Harrison.    Tried below before the Hon. J. B. Williamson, without a jury.

The facts appear in the opinion, but as the testimony of possession is not stated at length we give it entire.

Defendants proved by William S. Richardson that he knew the one thousand acres of land described in the answer of defendants; that the same joined his father's tract of land, on which was the homestead of his father, the said William S. Richardson; that it lay west of the said tract of his father; that his father contracted for said one thousand acres as early as 1848, with John Taylor, although the papers were not made out till later; that the plantation on his father's place extended to within one hundred and fifty or two hundred yards of said thousand acres; that said William S. Richardson, after his said contract with said John Taylor, claimed said land as his own, and used the same, by cutting timber for rails, and using said rails for fencing, and using said timber for other farming purposes, which was done from time to time till the death of said William S. Richardson, and that such claim to said land and use of the timber thereon was continued from the time of the death of said William S. Richardson by his (witnesses') mother and as the administratrix of the estate of the said William S. Richardson, deceased, and by the family of said deceased up to the present time.

Defendants proved by Nathan Nesbitt that he knew said one thousand acres; that he has known the same since the spring of 1849; that it joined William S. Richardson's home place, on the west of said home place; that it has always been known as the Richardson thousand

acres; that Richardson in his lifetime used the timber on said thousand acres for the purpose of fencing his home place, the cleared land of which came within a short distance of said thousand acres; that Mrs. Richardson, the administratrix, made the same use of the timber as said William S. Richardson; that he only saw use made of said timber occasionally—that he did not know whether it was continuous or not, as he lived about two miles from Richardson's; that no part of said one thousand acres was cleared and fenced by Richardson or by the administratrix, or any other person. He also proved that himself and other persons had taken timber off of the land; that he had no authority from Richardson or any one else to do so, but that he had repeatedly had Mr. Sanders' permission to do so.

Samuel J. Richardson also testified that neither his father nor mother had cleared or fenced any of said one thousand acres; that he himself, as agent of said administratrix, had paid the taxes on said one thousand acres for more than five years, from the first of January, A. D. 1850, and that it was his belief that he paid the tax thereon for the year A. D. 1849; that his mother was administratrix of his father's estate, and that he attended to the outside business, she only signing her name to necessary papers, and that he had paid said taxes as such general agent.

*Geo. Lane*, for appellants, cited 25 Texas, Tucker v. Smith; 1 Peters, 37, Jackson v. Clark; 11 Peters, 49, Ewing v. Barnett; 2 Dana, 127, Boyce v. Drake; 4 Mon., 442, Cotes v. Loftus.

*J. W. Harris*, for appellee, cited Pas. Dig., Art. 951; 28 Texas, 284, Whitehead v. Foley; 26 Texas, 215, Andrews v. Marshall; 9 Texas, 317, Wheeler v. Moseley.

McAdoo, J.—On February 23, 1838, the board of commissioners for Shelby county granted a certificate to Josephus Moore, assignee of John Hays. This certificate was located February 25, 1838, on a league and a labor of land in Harrison county, and the survey was made February 28, 1838.

The "traveling board of Land Commissioners" did not recommend this certificate as valid. Moore brought suit against the State in Shelby county, in 1843, to validate this certificate—not to validate the location under it. In 1850 he obtained a decree that "Josephus Moore, assignee of John Hays, do recover of the State of Texas a certificate for one league and labor of land." The State appealed, and in 1852 the judgment was affirmed.

In 1846 Moore conveyed, by quit-claim, the one thousand acres of land in controversy to one John Taylor; and in 1849 Taylor and William S. Richardson entered into a contract of sale and purchase of the same, in which these words occur: "But this sale and these payments are made and to be made under the following conditions and stipulations, that is: The said Taylor's right to said land depending, as is well understood by these parties, on the result of a suit now pending in the District Court of Rusk county, by Josephus Moore v. The State, to establish the headright certificate of John Hays, and his own right to the same as assignee," etc.

Under Richardson the appellants claim. After the affirmance of the judgment in favor of Moore he located his certificate, so established, in Hill and Johnson counties, and obtained a patent June 25, 1855, in favor of Josephus Moore, for a league and labor of land.

This judgment merged the old certificate into the new, and the last location and patent exhausted the certificate. The old location was abandoned, the land became public, and subject to location by any valid certificate. Moore,

when he sold by quit-claim, conveyed no title except such as he had in the land.   He had none.

Had he brought suit for the land located, as well as for the establishment of his certificate, and obtained such a judgment, the sale even then to Taylor would barely have held.   But as he sued for and recovered nothing but a certificate, and his former location was abandoned, the certificate obtained by decree located on other land and patent obtained, it is perfectly clear no equities growing out of the quit-claim deed from Moore to Taylor, or from the agreement of sale and purchase from Taylor to Richardson, or the appellants under him, can be enforced in this court against one who has, by a valid certificate, located and followed up by return of field notes and certificate to a patent.

Duval, on October 8, 1853, located a genuine certificate on the league and labor in Harrison county, including the one thousand acres involved in this suit, which was located *after* Moore located his adjudicated certificate in Hill and Johnson counties, and he obtained a patent October 20, 1863, over eight years after the patent to Moore was issued to the land in Hill and Johnson counties.

Had Moore relied on his old location, after having the Hays certificate established by suit, and followed the field notes of the old survey, or had a new survey been made under his adjudicated certificate, with the certificate itself returned into the Land Office, then his right to the league of land would have accrued perfectly.   But he never filed in the Land Office the certificate with the field notes, but located, on the contrary, the certificate on other vacant land, in a remote section of the country, and followed up this location to the issuance of the patent.

There was a clear abandonment of the old survey, as well as a non-compliance with the act of the tenth of February, 1852, entitled "An act concerning surveys of land,"

and which was in force when his judgment validating the·
Hays certificate was affirmed by this court.

That act provided "that the field notes of all surveys
made previous to the passage of this act shall be made
out and returned in the manner now required by law, to
the General Land Office, on or before the thirty-first·
day of August, 1853, or they shall become null and void;·
and the said survey shall become vacant land, subject to
be located on, as in other cases, by any person holding a·
genuine land certificate, or other legal evidence of a claim·
to land." (Art. 4562, Pas. Dig.)

The record shows that the field notes of the original·
survey for Moore were sent up, but they were not certified·
to, as the law required. The certificates — either the old
rejected one or the new one—never were sent up in con-·
nection with this survey. Even if the new certificate had·
never been located on other vacant land, still the old sur-·
vey and location were forfeited under the act of the tenth
of February, 1852.

It will be borne in mind, also, that the conveyance·
from Moore to Taylor was only a quit-claim deed.

Taylor's purchase was with notice of the inchoate title;·
subject to loss or forfeiture, by Moore; and the other·
transfer, on its face, shows that the contract was with full
knowledge of the state of title.

The parties claiming under Moore trusted him; they·
knew he had no title which he himself could not defeat·
by fraudulently floating his certificate, even if good. He·
did float it—did locate it elsewhere—did obtain from the·
State all she owed him—a league and labor of land; and·
after having done so—after he rendered the land vacant
by his own neglect to comply with the law, and his pos-
itive act of abandonment of the old survey, Duval, with
a valid certificate, located on the land, and pursued his·
location to patent.

Duval has equities, as well as legal rights. If the appellants have equities they are against the estate or heirs of Moore, by whose acts and neglect such equities have sprung; but they have certainly neither equities nor legal rights as against Duval. If they have suffered from the fraud or bad faith of Moore, Duval is not responsible.

But the defendant set up the five years statute of limitation. We think the proof does not in any manner sustain the plea.

The testimony of S. J. Richardson, a son of the party under whom appellants claim, shows that "his father's plantation extended to within one or two hundred yards of the said one thousand acres, and that they had cut timber therefrom;" and Nesbit's testimony is to the same effect.

There is no proof of use, occupancy and enjoyment; no proof of the payment of taxes; no proof whatever that goes beyond a mere trespass upon the land in the cutting of the timber therefrom.

The statute of limitation under which the appellants claim reads as follows: "He, she, or they, who shall have had five years' peaceable possession of real estate, cultivating, using, or enjoying the same, and paying taxes thereon, if any, and claiming under a deed or deeds duly registered, shall be held to have full title, precluding all claims, but shall not bar the government." (Art. 4623, Pas. Dig.)

We find no error in the judgment of the District Court, and it is affirmed.

AFFIRMED.